**IN RE MURDOCK**

[222 N.C. App. 45 (2012)]

IN THE MATTER OF HENRY EDWARD MURDOCK

No. COA12-79

(Filed 7 August 2012)

**1. Appeal and Error—appealability—mootness—prior discharge—involuntary commitment**

Although defendant's term of involuntary commitment was expired, a prior discharge would not render questions challenging the involuntary commitment proceeding moot.

**2. Mental Illness—involuntary commitment—violent crime—fact-based analysis—resisting an officer—assault with deadly weapon**

The trial court did not err in an involuntary commitment case by conducting a fact-based analysis in determining whether defendant was charged with a violent crime under N.C.G.S. § 15A-1003(a). Based on the underlying factual scenario giving rise to defendant's charges, the trial court did not err by concluding that defendant was charged with a violent crime because the crime of resisting an officer involved an assault with a deadly weapon.

Appeal by defendant from orders entered 16 September 2010 by Judge Richard T. Brown in Scotland County District Court. Heard in the Court of Appeals 6 June 2012.

*Roy Cooper, Attorney General, by Richard Slipsky, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Emily H. Davis, Assistant Appellate Defender, for defendant-appellant.*

THIGPEN, Judge.

Henry Edward Murdock ("Defendant") appeals from two involuntary commitment orders following the determination that he was incapable of proceeding to trial. We must decide whether the trial court erred by concluding that Defendant was charged with a violent crime pursuant to N.C. Gen. Stat. § 15A-1003(a) (2011). We hold the trial court did not err by conducting a fact-based analysis in determining whether Defendant was charged with a violent crime under N.C. Gen. Stat. § 15A-1003(a). We further hold that based on the underlying factual scenario giving rise to Defendant's charges, the

trial court did not err by concluding that Defendant was charged with a violent crime. Accordingly, we affirm.

## I. Factual and Procedural Background

On 5 October 2009, Defendant was indicted for possession of a firearm by a felon, misdemeanor resisting an officer, and habitual felon status. Defendant's counsel moved to have his client evaluated to determine his capacity to proceed to trial. A capacity hearing was held on 15 September 2010. The State presented evidence, including a report from Dr. David Hattem, a psychologist who had evaluated Defendant. Dr. Hattem's report concluded that Defendant lacked capacity to proceed, and the trial court found Defendant incapable of proceeding to trial. The trial court then conducted a hearing pursuant to N.C. Gen. Stat. § 15A-1003 to determine whether Defendant met the criteria for involuntary commitment.

At the N.C. Gen. Stat. § 15A-1003 hearing, James Munger, an officer with the Laurinburg Police Department, testified that on 16 July 2009, he and Officer Wilkerson went to Defendant's residence to serve a trespassing warrant on Defendant. When they arrived, Defendant was sitting on the porch drinking a beer. The officers advised Defendant that they were there to arrest him for trespassing. Defendant became agitated, said he wasn't going, and ran into the house. The officers followed him into the back bedroom where Officer Wilkerson observed an open lock box on the bed and yelled, "gun." The lock box contained a loaded revolver that was within "hand's reach" of Defendant. Officer Munger grabbed Defendant and a "tussle" ensued. Defendant was subsequently taken to the ground and handcuffed. Officer Munger testified that Defendant resisted when he removed Defendant from the bedroom, and Defendant also resisted while being handcuffed. As a result of the events on 16 July 2009, Defendant was charged with possession of a firearm by a felon and misdemeanor resisting an officer.

Based on the evidence presented at the N.C. Gen. Stat. § 15A-1003 hearing, the trial court found that Defendant was incapable of proceeding and had been charged with a violent crime. The trial court also made the following findings in its 16 September 2010 involuntary commitment orders:

[Defendant] is charged with a violent crime in violation of [N.C. Gen. Stat.] 14-415.1; 14-223, in that the Def[endant] upon being informed that he was to be arrested, fled from the officers by

moving from his porch to his bedroom, where the officers in immediate pursuit, found the Def[endant] within arms reach of a firearm; that the Def[endant], again within arms reach of the firearm, fought with the officers as they attempted to arrest him.

The trial court ordered Defendant taken into custody and transported to Cherry Hospital, a 24-hour facility, for "temporary custody, examination and treatment pending a district court hearing."

On 10 October 2011, Defendant filed a petition for writ of certiorari seeking review of the 16 September 2010 involuntary commitment orders. This Court entered an order granting Defendant's petition on 25 October 2011.

Defendant's sole argument on appeal is that the trial court erred by concluding that Defendant was charged with a violent crime pursuant to N.C. Gen. Stat. § 15A-1003(a). Specifically, Defendant contends the trial court erred by applying a fact-based analysis in determining whether Defendant was charged with a violent crime.

## II. Analysis

[1] As a preliminary matter, we note that although Defendant's term of involuntary commitment has expired,[1] "a prior discharge will not render questions challenging the involuntary commitment proceeding moot." *In re Webber*, 201 N.C. App. 212, 217, 689 S.E.2d 468, 472 (2009) (citation and quotation marks omitted). "When the challenged order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that order is not moot." *Id.* at 217, 689 S.E.2d at 472-73 (citation omitted). We, therefore, address the merits of this appeal.

"Where an appeal presents a question of statutory interpretation, full review is appropriate, and we review a trial court's conclusions of law *de novo.*" *State v. Davison*, 201 N.C. App. 354, 357, 689 S.E.2d 510, 513 (2009) (quotation marks omitted), *disc. review denied*, 364 N.C. 599, 703 S.E.2d 738 (2010). "In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. Legislative purpose is first ascertained from the plain words of the statute." *Electric Supply Co. of Durham, Inc. v. Swain Elec. Co., Inc.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (citations omitted). "Dictionaries may be used to determine the plain meaning of words." *Moore v. Proper*, ____ N.C.

---

1. At the district court commitment hearing on 23 September 2010, Defendant was committed for a period not to exceed 90 days. On 16 December 2010, Defendant was discharged into the custody of the sheriff.

App. ____, ____, 715 S.E.2d 586, 594 (2011) (quotation omitted), *aff'd in part and remanded*, ____ N.C. ____, 726 S.E.2d 812 (2012). "Courts also ascertain legislative intent from the policy objectives behind a statute's passage and the consequences which would follow from a construction one way or another." *Electric Supply*, 328 N.C. at 656, 403 S.E.2d at 294 (citation and quotation marks omitted).

**[2]** N.C. Gen. Stat. § 15A-1003 governs the referral of an incapable defendant for civil commitment proceedings and provides in relevant part:

> If the defendant was charged with a violent crime, including a crime involving assault with a deadly weapon, the judge's custody order shall require a law-enforcement officer to take the defendant directly to a 24-hour facility as described in G.S. 122C-252; and the order must indicate that the defendant was charged with a violent crime and that he was found incapable of proceeding.

N.C. Gen. Stat. § 15A-1003(a).

Defendant contends the term "violent crime" in N.C. Gen. Stat. § 15A-1003(a) indicates the legislature's intent to look at the elements of the offense charged in determining what constitutes a violent crime rather than looking at the underlying facts of the case. Thus, Defendant contends the trial court erred by applying a fact-based analysis instead of an elements-based analysis in determining whether Defendant was charged with a violent crime. The State, however, argues that N.C. Gen. Stat. § 15A-1003(a) "allows for either a fact based analysis or an element based analysis"; thus, the trial court did not err. We agree with the State.

The relevant portion of N.C. Gen. Stat. § 15A-1003(a) uses the words "violent crime" followed by the parenthetical phrase "including a crime involving assault with a deadly weapon[.]" First, we must determine whether the legislature intended the words "violent crime" to mean an element based offense or a factually based offense.

Black's Law Dictionary defines "violent crime" as "[a] crime that has *as an element* the use, attempted use, threatened use, or substantial risk of use of physical force against the person or property of another." Black's Law Dictionary 378 (7th ed. 1999) (citation omitted) (emphasis added). Thus, the definition of violent crime suggests that the legislature intended for courts to apply an elements-based analysis under N.C. Gen. Stat. § 15A-1003(a). *See also State v. Davison*, 201 N.C. App. 354, 364, 689 S.E.2d 510, 517 (2009) (holding that "[t]he General Assembly's repeated use of the term 'conviction' compels us

to conclude that, when making a determination pursuant to N.C.G.S. § 14–208.40A [of whether the defendant committed an 'aggravated offense' for purposes of sex offender monitoring], the trial court is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction"), *disc. review denied,* 364 N.C. 599, 703 S.E.2d 738 (2010).

However, our analysis does not end here. We must also look to the parenthetical phrase of N.C. Gen. Stat. § 15A-1003(a) which states, "including a crime involving assault with a deadly weapon[.]" In interpreting the parenthetical phrase, we find a comparison to N.C. Gen. Stat. § 15A-2000(e)(3) instructive. N.C. Gen. Stat. § 15A-2000(e) (2011) lists the aggravating circumstances that may be considered in determining whether a defendant found guilty of a capital felony should be sentenced to death or life imprisonment, including that "[t]he defendant had been previously convicted of a felony involving the use or threat of violence to the person[.]" N.C. Gen. Stat. § 15A-2000(e)(3). In interpreting N.C. Gen. Stat. § 15A-2000(e)(3), our Supreme Court has stated:

> The statute does not state that the jury may only consider as an aggravating circumstance those felonies in which the use or threat of violence to the person is an element of the offense. The statute contains the word "involving," which indicates an interpretation much more expansive than one restricting the jury to consider only felonies having the use or threat of violence to the person as an element. Crimes that do not have violence as an element may be committed by the use or threat of violence. By using "involving" instead of language delimiting consideration to the narrow class of felonies in which violence is an element of the offense, we find the legislature intended the prior felony in N.C.G.S. 15A-2000(e)(3) to include any felony whose commission involved the use or threat of violence to the person. Thus we hold that for purposes of N.C.G.S. 15A-2000(e)(3), a prior felony can be either one which has as an element the involvement of the use or threat of violence to the person, such as rape or armed robbery, or a felony which does not have the use or threat of violence to the person as an element, but *the use or threat of violence to the person was involved in its commission.*

*State v. McDougall,* 308 N.C. 1, 18, 301 S.E.2d 308, 319 (internal citation omitted) (emphasis added), *cert. denied,* 464 U.S. 865, 104 S. Ct. 197, 78 L.Ed.2d 173 (1983).

IN RE MURDOCK

[222 N.C. App. 45 (2012)]

Following *McDougall*, we conclude that the legislature's inclusion of the parenthetical phrase in N.C. Gen. Stat. § 15A-1003(a) and its use of the word "involving" indicate an intent for courts to apply a fact-based analysis. We note, however, that the term "involving" is used only in the parenthetical phrase. We believe the legislature's choice to use the term "involving" only in the parenthetical phrase indicates its intent for a fact-based analysis to apply only to the determination of whether assault with a deadly weapon was involved in the commission of the crime charged.

Accordingly, considering the entirety of the relevant statutory language, we hold that in determining whether a defendant is charged with a violent crime pursuant to N.C. Gen. Stat. § 15A-1003(a), courts may consider the elements of the offense a defendant is charged with and the underlying factual scenario giving rise to the charge. However, pursuant to the plain language of N.C. Gen. Stat. § 15A-1003(a), in conducting the fact-based analysis, courts are to determine only whether the crime charged involved assault with a deadly weapon. Thus, we hold that for purposes of N.C. Gen. Stat. § 15A-1003(a), a "violent crime" can be either one which has as an element "the use, attempted use, threatened use, or substantial risk of use of physical force against the person or property of another[,]" Black's Law Dictionary 378, or a crime which does not have violence as an element, but assault with a deadly weapon was involved in its commission.

In this case, Defendant was charged with possession of a firearm by a felon pursuant to N.C. Gen. Stat. § 14-415.1 and resisting an officer pursuant to N.C. Gen. Stat. § 14-223. Violence is not an element of either of these offenses. *See State v. Wood*, 185 N.C. App. 227, 235, 647 S.E.2d 679, 686 (stating that the elements of possession of a firearm by a felon are that "(1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm"), *disc. review denied*, 361 N.C. 703, 655 S.E.2d 402 (2007); *see also State v. Hardy*, 298 N.C. 191, 197, 257 S.E.2d 426, 430 (1979) (analyzing N.C. Gen. Stat. § 14-223 and stating that "[v]iolence or direct force is not necessarily an element of the crime of resisting an officer"). Thus, in applying an elements-based analysis, neither of the crimes Defendant was charged with is a violent crime.

However, in applying a fact-based analysis, we examine the underlying facts giving rise to Defendant's charges to determine whether assault with a deadly weapon was involved in the commission of the crimes. The elements of assault with a deadly weapon are: (1) an assault of a person; (2) with a deadly weapon. N.C. Gen. Stat.

§ 14–33(c)(1) (2011). A gun is a deadly weapon. *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924). Our Supreme Court defines the common law offense of assault as follows:

> an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

*State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967) (quotation marks and citations omitted).

In this case, based on the underlying factual scenario giving rise to Defendant's charges, we believe an assault with a deadly weapon was involved in the commission of the crime of resisting an officer. Specifically, Defendant's actions of stating that he wasn't going with the officers, running into the bedroom where he stood within arm's reach of a loaded revolver, and resisting while being handcuffed and removed from the bedroom were an "unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to" the officers. *Id.; see also State v. Barksdale*, 181 N.C. App. 302, 307, 638 S.E.2d 579, 583 (2007) (holding that "we are not persuaded by defendant's contention that an assault did not take place because he never 'made physical contact with the weapon.' In light of the evidence showing that the gun was only inches from defendant's outstretched hand and that defendant was actively, forcefully, and to some degree successfully resisting the officers' attempt to arrest him, we do not believe, in light of our State's definition of assault, that defendant's failure to physically touch the weapon precludes the commission of an assault with the firearm.") (citation omitted).

In sum, the trial court did not err by conducting a fact-based analysis in determining whether Defendant was charged with a "violent crime" pursuant to N.C. Gen. Stat. § 15A-1003(a). Furthermore, based on the underlying factual scenario giving rise to Defendant's charges, the trial court did not err by concluding that Defendant was charged with a violent crime because the crime of resisting an officer involved an assault with a deadly weapon.

AFFIRMED.

Judges BRYANT and STEPHENS concur.